SHEORN v. ROBINSON.

1. Actual possession of land by a vendee under a contract to purchase operates as notice to a subsequent purchaser from the vendor, although such possession, as matter of fact, is unknown at the time to such subsequent purchaser. MR. JUSTICE MCIVER, *dissenting.*
2. *Per* MCIVER, A. J. A purchaser of land under a decree of foreclosure is chargeable with notice of the rights of a purchaser in possession under a contract to purchase (prior in date to the mortgagor) where the title deeds held by the mortgagor gave notice, which, if prosecuted, would have led to knowledge of such contract.

Before FRASER, J., Kershaw, May, 1884.

To the statement of the case as made by the Circuit decree, it will be proper to add the following facts, which appear in the brief:

In compliance with defendant's notice, plaintiff produced the following deeds, which defendants offered in evidence, to wit:

I. Deed of J. D. Dunlap, receiver of John Chesnut, to Thos. Moore and A. L. Monroe, March 1, 1869, 618 acres, more or less, bounded west by Watcree river, No. 19 of the general plat, plat whereof is attached to the deed.

II. Thos. Moore to A. L. Monroe, February 16, 1873, "all my right, title, and interest in 286 acres of said land," "bounded north by land of Jos. Brevard, Scipio Williams, and Paris Watts, east by land of Wm. J. Gerald, south by Wm. D. McDowall, and west by Thos. Moore, as shown by plat hereto annexed and by plat annexed to deed to Robert Robinson from myself, bearing even date herewith, being the eastern portion of the tract of 618 acres conveyed by Dunlap to Thos. Moore and A. L. Monroe" as above stated. Defendant offered in evidence the record book, "C. C.," p. 106, showing the plat of the last mentioned deed, which calls for 220 acres. The plat was made by S. M. Boykin, D. S., at the request of A. L. Monroe, on November 15, 1869.

III. Deed of A. L. Monroe to Robert Robinson, dated February 17, 1873, for 66 acres, at two hundred and ninety-seven dollars, plat attached with renunciation of dower. This deed

was never delivered or recorded, and was found in possession of A. L. Monroe after his death.

The description, boundaries, marks, &c., of the land in mortgage of A. L. Monroe to Witte Bros., is the same as in deed of Moore to Monroe, except that no reference is made to plats or deed to Robinson.

The Circuit decree was as follows:

This case came before me at the June term of the court for Kershaw County, on the report of the master and exceptions thereto. The action was brought originally against Robert Robinson and Wesley Truesdel, and the former having departed this life, it was duly continued against his heirs at law. The action was brought to recover possession of a tract of land containing (66⅔) sixty-six and two-thirds acres of land, and an equitable defence was set up, and by consent all the issues of law and fact were referred to the master.

In March, 1869, A. L. Monroe and Thomas Moore purchased at the sale of the lands of the late John Chesnut a tract of 618 acres of land. Both parties in this action claim under A. L. Monroe, and it is therefore unnecessary to inquire into the validity of the title of John Chesnut, or in what way partition was made between Thomas Moore and A. L. Monroe, so as to give title in severalty to A. L. Monroe for 286 acres of said tract of 618 acres, and of which 286 acres the land in dispute is a part. For the purposes of this case neither party can dispute his title, and the pleadings show this derivation of title from a common source without any evidence on the subject.

The tract of 618 acres was mortgaged by Thomas Moore and A. L. Monroe to secure the purchase money to the estate of John Chesnut. A. L. Monroe gave to Witte Bros. a mortgage of the 286 acres in 1875, and one in 1876 for advances, and one again in 1877, by which the two former were cancelled; with money borrowed from Witte Bros. the Chesnut mortgage was paid up. The mortgage to Witte Bros. of 1877 was foreclosed by a decree of the court, and at the sale on June 8, 1880, plaintiff became the purchaser and took title, and the sale was confirmed by order of the court. Before this sale defendants gave notice of their claim, the plaintiff being present, and there receiving actual notice.

The master thus states the defence set up by Robert Robinson, who is now represented in this case by his heirs at law: "A. L. Monroe, in March, 1870, agreed to sell, and did sell, to Robert Robinson, sixty-six and two-thirds acres of said land, and on that day received from Robert Robinson $130 in part payment, and put Robinson into possession of the same, and had a dividing line between his land and Robinson's run out by a surveyor; that Robinson also paid Monroe $189.50 in part payment of the same land in the years 1872, 1873, and 1875, and then ceased paying, leaving a balance still due for the 66⅔ acres. The proof is that Robinson built a frame house on the land, worth two hundred dollars, with two rooms and passage, brick chimney and windows; and that he cut timber on the land and sold it as firewood; that he boxed the pine trees for turpentine and sold the rosin; that he cleared up a part of the land in 1870, and has cultivated it from then until this time."

A deed with renunciation of dower was made out and signed, but not delivered, by Monroe. The testimony by Wesley Truesdel, which I think not excluded by section 400 of the code, and if it had been, could only have been objected to by Robinson and his heirs (9 *S. C.*, 392), shows that he entered and is still in possession of 30 acres of this 66⅔ acres, under some agreement with Robert Robinson. I am unable to ascertain, from anything before me, the exact amount still due on the contract between A. L. Monroe and Robert Robinson, or how much has been paid by Wesley Truesdel on his contract with Robinson (if anything), though it does appear that he has erected a log house on the land.

If Wesley Truesdel is in possession as a *tenant*, his possession inures to the benefit of Robert Robinson, who put him in possession. If he is in possession as a *purchaser* from Robert Robinson, he is entitled to the full protection of any equitable rights which Robert Robinson may have acquired in the land. In *Jones on Mortgages*, § 600, we find the following: "Possession by a vendee under a contract of purchase, whether it be personal or by a tenant, is constructive notice of his equitable rights as purchaser, and any one taking a mortgage under such circumstances from his vendor, takes subject to his rights. The mortgage lien,

under such circumstances, covers the property only to the extent of the unpaid purchase money."

In the discussion of the subject in *Pomeroy Eq. Jur.*, § 615, we find that "the constructive notice thus described, like that arising from a record or registration, does not seem to depend upon any *actual knowledge or information* of the possession communicated to or had by the subsequent purchaser, since he is held to be charged with notice even though he is a resident of another state. * * The purchaser cannot say, and cannot be allowed to say, that he made a proper inquiry and failed to ascertain the truth." See *Knox* v. *Thompson*, 13 *Amer. Dec.*, 246, and note.

The case of a purchaser at a sale by the sheriff under an execution is not exactly analogous to that of a purchaser at private sale and who holds under a mortgage as an individual deed; but in *Kairson* v. *Puckhaber*, 14 *S. C.*, 626, No. 990, it is said "that possession was notice," which I take to mean without any *actual notice* of the possession; possession, like recording, operating as notice. At any rate, I think that a man who buys or takes a mortgage of land is presumed to know whether the possession corresponds with the paper title, and if inconsistent with it, this would be sufficient to affect him with notice of all the rights which accompany such possession. I therefore hold that Robert Robinson was entitled to have a specific performance of the contract with A. L. Monroe, and that Wesley Truesdel is protected thereby in his contract with Robert Robinson; that Witte Brothers took subject to these equities, and that the plaintiff takes no higher title than Witte Bros.

For want of accurate information, I cannot make a complete decree, but can only announce my judgment on the principles which govern the case.

It is therefore ordered and adjudged, that the report of the master be overruled; that the plaintiff has the right to have payment of the full amount of the purchase money, and interest, which remains unpaid, according to the contract between A. L. Monroe and Robert Robinson; that it be referred to the master to inquire and report what this balance so unpaid amounts to; that upon the coming in and the confirmation of such report, if

such balance be not paid within a time to be fixed by the court, that the master do sell the said 66⅔ acres on such terms and at such time as the court may order, and out of the proceeds of sale he do pay the costs of the plaintiff and expenses of the sale, and then to the plaintiff such unpaid balance; then the costs of the other parties to this action, and any balance to the defendants in the proportions they may be entitled to under the agreement with Wesley Truesdel made by Robert Robinson.

It is also ordered and adjudged, that the master do inquire and report the terms of the contract between Robert Robinson and Wesley Truesdel, and what amount is due thereon, and if the amount of the balance due to plaintiff on the coming in of the master's report, and the confirmation of the same, shall be paid as directed by the court, or if a sale shall be made as above provided for, then the title to the 66⅔ acres to be made, or the distribution of any balance coming to the defendants to be paid out to them in such proportion as their interests shall appear under said report, the heirs of Robert Robinson being entitled to the whole, land or fund, as the case may be, except so much as may be coming to Wesley Truesdel under his contract.

If the whole balance due to the plaintiff shall be paid in as may be directed by the court, on the coming in of the master's report, then all the costs to be paid by the several parties who have incurred them.

The plaintiff appealed upon the following exceptions:

1. That his honor errs in holding that one "who buys, or takes a mortgage of land, is presumed to know whether the possession corresponds with the paper title, and, if inconsistent with it, this would be sufficient to affect him with notice of all the rights which accompany such possession."

2. That his honor erred in holding that possession of land by one who claims to hold under contract of purchase, is *constructive notice* to a subsequent mortgagee for value of the claims of such party in possession.

3. That his honor erred in holding that the defendants are entitled to demand of plaintiff a specific performance of contract with A. L. Monroe, mortgagor; the mortgagees having no notice of their occupancy or claims.

*Mr. J. T. Hay* for appellant *cited* 108 *U. S.*, 517; *Jones Mort.*, §§ 570, 576, 591–2; *Dart Vend. & Pur.*, 402–5; 2 *Wh. & Tud. Lead. Cas.*, 407; *Pom. Eq. Jur.*, §§ 660, 664; 6 *Serg. & R.*, 179; *Bail. Eq.*, 266, 386; *Speers's Eq.*, 159; *McMull. Eq.*, 196; 17 *S. C.*, 593; 1 *McCord*, 428; 2 *Bail.*, 101.

*Mr. W. H. R. Workman,* contra.

November 19, 1884. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. Witte Bros., of Charleston, held a mortgage on one A. L. Monroe, of Kershaw County, executed in 1877, and covering the land in dispute. This mortgage was foreclosed by proper proceedings in 1880 and the land ordered to be sold. At this sale, made in February, 1881, the appellant, Sheorn, became the purchaser, and finding the defendants in possession of sixty-six acres of the land mortgaged, brought the action below for possession and damages for the detention. The defendants interposed an equitable defence growing out of the following facts: That in 1870, some years before the execution of the mortgage by Monroe to Witte Bros., the defendant Robinson bought from the said Monroe the sixty-six acres in controversy, a portion of which he sold to his co-defendant Truesdel, and although no conveyance was delivered by Monroe, yet that he immediately went into possession under this purchase, and with his co-defendant has continued in possession ever since, having in the meantime paid nearly all, if not the entire, purchase money.

The fact of possession by the defendants, as stated, from 1870 is conceded, and it is also admitted that Sheorn, appellant, had full knowledge of this possession at the time he bought at the foreclosure sale. Witte Bros., however, had no actual knowledge of the sale by Monroe to Robinson, or of the possession of Robinson, at the time they took their mortgage under the foreclosure of which Sheorn purchased. Under this state of facts, the Circuit judge held that although Witte Bros. had no actual knowledge of the possession of Robinson, yet the fact of this possession, like the record of a deed, operated as notice, and that there-

fore the appellant, standing in the shoes of Witte Bros., was not a subsequent purchaser without notice. The appeal questions this ruling, and this is the only question in the case.

The ruling of the Circuit judge in its full meaning is that possession of land by a vendee under a contract of purchase operates as notice to a subsequent purchaser or encumbrancer, although such possession as matter of fact is unknown to such subsequent purchaser at the time of said purchase. The possession in such case stands in the place of a record of the deed where the vendee has purchased with a conveyance regularly executed and delivered, and as the record of a prior deed is notice, whether it is actually known or not, so possession, whether known or not, is also sufficient notice.

.In *Jones on Mortgages*, section 600, the doctrine on this subject is laid down in general terms as follows: "Possession by a vendee under a contract of purchase, whether it be personal or by a tenant, is constructive notice of his equitable rights as purchaser, and any one taking a mortgage under such circumstances from his vendor takes subject to his rights." It is not distinctly stated here whether the knowledge of the fact of possession must be brought home to the subsequent encumbrancer or purchaser, yet it is held that the possession is the foundation of the notice, and therefore, like recording, must operate as constructive notice, whether actually known or not.

The ground upon which the recording of a deed operates as notice, whether the fact of record be known or not, is that it is always in the power of the subsequent purchaser, by searching the records, to ascertain whether or not there has been a previous conveyance; and if he fails to make the necessary examination, it is his own fault, and his rights must be determined by the facts of the record within his reach on the subject. So, too, it is an easy matter for a purchaser of land to ascertain at the time of his purchase whether his vendor or some one else is in possession, and if he fails to do so, he should take the consequences. Mr. Pomeroy, in treating of constructive notice, says: "The constructive notice thus described, like that arising from a record or registration, does not seem to depend upon any actual knowledge or information of the possession communicated to or had by

the subsequent purchaser, since he is held to be charged with notice even though he be a resident of another state.'' *Pom. Eq. Jur.*, § 615.

And in our case of *Massey* v. *McIlwaine, McCardell and King*, 2 *Hill Ch.*, 427, where the land of King had been sold under executions against him in favor of creditors who had no knowledge of the possession of Massey, who was holding under a contract of purchase, the court, in discussing the effect of the possession, said: "He (Massey) was also in possession, and that, according to some of the English cases, was not only a notice to creditors, but sufficient to repel the claim of a subsequent purchaser. In *Daniels* v. *Davidson* (16 *Ves.*, 254), the Lord Chancellor (Eldon) observes that there was considerable authority for the opinion which he held, that where there was a tenant in possession under a lease or agreement, a person purchasing the estate was bound to inquire on what terms he was in possession, and was bound by the terms of the lease or agreement, and refers to the case of *Douglas* v. *Whitrong*, in which Lord Kenyon held that possession was sufficient notice, and to the case of *Taylor* v. *Stibbert*, 2 *Ves.*, *Jr.*, 440, in which it was expressly ruled; and if possession alone be notice to a purchaser, it is necessarily so to creditors."

In the case of *Massey* v. *McIlwaine and others, supra,* while it was conceded that McIlwaine and McCardell, the purchasers, had full notice of the transactions between Massey and King before they purchased at the sheriff's sale, yet it was not pretended that the creditors of King had any information whatever as to the sale by King to Massey, or of Massey's possession; and it was also conceded that McCardell and McIlwaine had the right to stand in the shoes of the creditors who had no notice. With these facts, however, the court held that the claim of Massey was superior to that of the purchaser, basing its judgment partly at least on the ground that the possession of Massey operated as notice.

We have examined the English cases of *Daniels* v. *Davidson* and *Taylor* v. *Stibbert*, above referred to. In the latter, it seems that the possession of the adverse claimant was known to the purchaser, and the court said that there was no difficulty in hold-

ing that whoever purchases an estate from the owner, knowing it to be in possession of tenants, is bound to inquire into the estates of these tenants. In the former case, it was said: "That to maintain the plea of purchase for valuable consideration without notice, the defendant must aver that the vendor was, or pretended to be, seized, and that he was in possession, which would be satisfied by the possession of his tenant." This seems to imply that if he bought with some one else in possession, other than his vendor, his failure to know this fact would be inexcusable, and he could not aver that said vendor was in possession, a necessary averment in the plea of *bona fide* purchase without notice.

There are two kinds of notice, actual and constructive. Either is sufficient to prevent the plea of *bona fide* purchase without notice. It is not necessary to discuss actual notice. That is well understood, and such notice is not claimed here. The case turns on constructive notice. An illustration of constructive notice is found in the recording of deeds. As we have said, recording amounts to notice, whether known or unknown, because the means of information are at hand. We think this principle should apply where at the time of the sale the vendor is out of the possession and a third party is in. It is the business of one who buys land, or attempts to secure a lien on land, to know the surroundings. In justice to his own interests, and certainly in justice to the interests of a party who has contracted to buy in advance of his purchase, and who is notoriously in possession, claiming it and using it as his own, he should examine into and ascertain the facts. One in possession under an equitable title has nothing that he can record; and possession, open and unconcealed, is the only mode by which he can give notice to the world of his rights; and when this notice is given in the only way in which it could be given, he should be protected. We think, upon authority and principle, the ruling of the Circuit judge was correct.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.

MR. JUSTICE McGOWAN concurred.

MR. JUSTICE MCIVER. It seems to me that the terms of the deed from Moore to Monroe, one of the links in the chain of plaintiff's title, were sufficient to put the purchaser upon inquiry, which, if followed up, would have disclosed the facts that the sixty-six acres had been sold to Robinson ; that he was put into possession, and that a deed for the same, with plat attached, had been signed, though not delivered. This, according to well-settled principles, would have been sufficient notice of Robinson's equity. I therefore concur in the result reached by the majority of the court.

I am not prepared, however, to assent to the doctrine that mere possession, unknown by the purchaser, or rather by the creditor under whom he claims, is sufficient notice. This would, in effect, annul the recording law, for the logical result would be that one in possession under an unrecorded deed would prevail over another holding a deed duly recorded ; and this is conceded to be the necessary consequence by the distinguished author upon whose authority the conclusion reached by the majority of the court mainly rests. See *Pom. Eq. Jur.*, § 615. Besides, it would be mounting a presumption upon another presumption : first, a presumption that the purchaser knew of the possession ; second, that he knew such facts as a knowledge of the possession would lead him to, by a proper prosecution of the inquiry.

Again, the very idea of the efficacy of constructive notice, in defeating a better legal title, is based upon fraud ; that one should not be permitted to buy property which he has good reason to know some one else has a just claim to. Now, unless he knows the facts which would lead to such a conclusion, he cannot be said to be guilty of any fraud. When a purchaser examines the records of the proper office, which the statute law informs him is the proper source to go to for information, and finds that his vendor has a clear legal title, he has a right to presume that everything is right, as the law presumes that he who has the legal title is constructively in possession ; and unless some fact, as, for example, the fact that some one, other than his vendor, is in actual possession, is brought to his knowledge, which would naturally lead him to suppose that there was some outstanding equitable claim, he has a right to stand upon such legal title.

It is true that the doctrine announced in the opinion of the majority of the court has the support of authority, cited in the opinion, of great weight. But, while recognizing the weight of such authority, I do not think it should be allowed to control, when the effect, as it seems to me, would be to annul, or at least defeat, the operation of a portion of the statute law of this state. I do not think that the case of *Massey* v. *McIlwaine*, 2 *Hill Ch.*, 421, decides the point now before us; for although it did appear, in that case, that the creditors had no notice of the equity set up by Massey, yet it did not appear whether they did or did not have knowledge of the fact of Massey's possession, and therefore it does not seem to me that the question which we are now called upon to determine was considered in that case.

In the absence of any authoritative decision in this state, I am unwilling to adopt a conclusion, however well supported by authority elsewhere, the effect of which would be to defeat the operation of a part of the statute law of this state.

Judgment affirmed.